# EXHIBIT B

# (State Court Complaint)



STATE OF NORTH CAROLINA
WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No.

2022 FEB 23 ⎵ 4: 28

WAKE COUNTY, C.S.C.

SARAH PERKINS,

    Plaintiff,

    v.

THE NEW YORK TIMES COMPANY,
d/b/a *THE NEW YORK TIMES*,

    Defendant.

**COMPLAINT**
**(Class Action)**

NOW COME Sarah Perkins (hereinafter "Plaintiff") by and through the undersigned counsel, complaining of Defendant The New York Times Company, d/b/a The New York Times (hereinafter "Defendant" or "New York Times"), and alleges as follows:

## NATURE OF THE ACTION

1.    This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription plans for *The New York Times* (collectively, the "NYT Subscriptions") through its website at https://www.nytimes.com and its mobile application (the "NYT Website" and the "NYT App," respectively).

2.    Defendant is an international media company that, among other activities, publishes and distributes *The New York Times*, including both its print and online editions. Relevant to Plaintiff's allegations, when consumers sign up for *The New York Times* at the NYT Website or App, Defendant actually enrolls consumers in a program that automatically renews customers' NYT Subscriptions from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third party payment account (collectively, "Payment Method"). In doing so, however, Defendant fails to provide the requisite disclosures and authorizations required to be made to North Carolina consumers under N.C.G.S. § 75-41.

3.     Pursuant to N.C.G.S. § 75-41 (the Auto Renewal Statute or "ARS"): any person engaged in commerce that sells, leases, or offers to sell or lease, any products or services to a consumer pursuant to a contract, where the contract automatically renews unless the consumer cancels the contract, shall do all of the following: (1) Disclose the automatic renewal clause clearly and conspicuously in the contract or contract offer; (2) Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services; (3) For any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date; and (4) If the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print.

4.     Defendant systematically violates the ARS by: failing to present the automatic renewal offer terms in a clear and conspicuous manner in the contract offer in violation of N.C.G.S. § 75-41(1), and failing to disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services, in direct violation of N.C.G.S. § 75-41(2), and filing to provide written notice for any automatic renewal exceeding 60 days, to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date in violation of N.C.G.S. § 75-41(3).

2

5. For the foregoing reasons, Plaintiff brings this action individually and on behalf of all North Carolina purchasers of any of Defendant's NYT Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their NYT Subscriptions. Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs for: (1) violation of N.C.G.S. § 75-41; (2) unfair and deceptive trade practices; and (3) unjust enrichment.

## JURISIDICTION AND VENUE

6. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

7. This Court has jurisdiction over the parties and this subject matter of this action because Plaintiff subscribed to New York Times in North Carolina and the violations of N.C.G.S. § 75-41 occurred in North Carolina.

8. Venue is proper under N.C.G.S. § 1-82. Defendant's Registered Agent listed with the North Carolina Secretary of State is Corporation Service Company, 2626 Glenwood Ave., Ste 550, Raleigh, NC 27608 in Wake County.

## PARTIES

9. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

10. Plaintiff Sarah Perkins is a citizen of Fayetteville, North Carolina, Cumberland County.

11. Defendant The New York Times Company ("NYT" or "Defendant") is a New York corporation with its principal place of business at 620 Eighth Avenue, New York, New York

3

10018, and a registered office in the State of North Carolina. Defendant is an international media company that publishes *The New York Times*, including both its print and online editions, which it markets to consumers through the NYT Website and App. Defendant is also responsible for the promotion, advertisement, and/or marketing of the automatically renewing subscription plans for *The New York Times*, and it owns and operates the NYT Website and App, where it markets and sells its NYT Subscriptions. Defendant sells NYT Subscriptions in North Carolina and has done business throughout North Carolina, and throughout the United States, at all times during the Class Period. Defendant also made automatic renewal or continuous service offers to consumers in North Carolina, and throughout the United States, via the NYT Website and/or App during the Class Period.

## FACTUAL ALLEGATIONS

### A. Background On The Subscription e-Commerce Market

12. The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1] Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. According to TechCrunch.com, "[s]ubscriptions have turned into a booming business for app developers, accounting for $10.6 billion in consumer spend on the App Store in 2017, and are poised to grow to $75.7 billion by 2022."[2] Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests.

13. Defendant "launched the subscription model in March 2011, becoming one of the first American news organizations that put its content behind a paywall after allowing unrestricted

---

[1] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

[2] *Sneaky subscriptions are plaguing the App Store*, TechCrunch (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

access."[3]  Since then, Defendant has been "seeing positive results at a time when newspapers nationwide have been suffering."[4]

14.  The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]

15.  However, there are downsides associated with the subscription-based business model.  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[6]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[7]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated,

---

[3] *The New York Times increases digital subscription price for the first time*, CNN Business (Feb. 4, 2020), https://www.cnn.com/2020/02/04/media/newyorktimes-raises-subscription-price/index.html.

[4] *New York Times Company Continues to Add Online Subscribers as Digital Advertising Grows*, NYTimes (May 8, 2019), https://www.nytimes.com/2019/05/08/business/media/new-york-times-company-earnings.html.

[5] *The State Of The Subscription Economy, 2018*, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] *Thinking inside the subscription box: New research on e-commerce consumers*, McKinsey & Company (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[7] *Id.*

"consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[8] As these companies have realized, "[t]he real money is in the inertia."[9] To facilitate consumer inertia, several subscription e-commerce companies, including Defendant, fail to fully disclose the terms of their automatic-renewal programs.

16.     Defendant has successfully implemented this tactic. "From 2017 to 2018, revenues from the Times' digital-only subscription packages increased 18% year-over-year to $401 million[.]"[10] By the end of 2019, Defendant "passed $800 million in annual digital revenue for the first time[.] ... Most of that $800.8 million — more than $420 million — came from news subscribers."[11] According to Mark Thompson, NYT's president and CEO, the fiscal year of 2019 was "'a record-setting year for [Defendant's] digital subscription business, the best since the company launched digital subscriptions [in 2011].'"[12]

**B.     Online Consumer Complaints About The NYT Subscriptions.**

17.     Defendant's recent growth in revenues and subscriber count with respect to its digital NYT Subscriptions coincides with a sharp decline in subscriber satisfaction as the NYT Website and App have become riddled with "dark patterns." A dark pattern is "a process design that requires several complex procedures to do simple things." One consumer complaint indicates

---

[8] *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets*, Washington Post (Apr. 7, 2014),
https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[9] *Id.*

[10] *The New York Times increases digital subscription price for the first time*, CNN Business (Feb. 4, 2020), https://www.cnn.com/2020/02/04/media/newyorktimes-raises-subscription-price/index.html.

[11] *The New York Times Tops 5 Million Subscriptions as Ads Decline* (Feb. 6, 2020), https://www.nytimes.com/2020/02/06/business/new-york-times-earning.html.

[12] *Id.*

that Defendant has been "using dark patterns to prevent user unsubscription from [its] site" by adopting "complex procedures to increase the friction in the subscription cancellation process and keep the user subscriber." For instance, although one page of the NYT Website states that consumers can cancel their NYT Subscription via chat, "[t]he chat facility is only available in-office hours (07:00 AM-10:00 PM) on weekdays and 07:00 AM-03:00 PM on weekends[, and] most of the time and days, their chat facility is unavailable due to excessive chat from customers[.]"[13].

18.     In fact, many subscribers have complained of the unclear billing practices and confusing cancellation policy associated with the NYT Subscriptions on the Better Business Bureau website[14], Yelp.com[15], and the "New York Times Customer Service" webpage at CustomerServiceScoreboard.com.[16]

19.     These reviews are just a sampling of numerous negative reviews consumers have left about Defendant's NYT Subscriptions and the unclear cancellations policy and confusing billing associated with the Subscriptions.

## C.     Defendant's Business: The Subscription Enrollment Process

19.     At all relevant times, Defendant offered, via the NYT Website and App, various NYT Subscriptions for *The New York Times*, a publication available in digital and print formats. These paid subscriptions are offered on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber

---

[13] *NYT shady unSubscription dark pattern explained & steps to exit* (May 1, 2020), https://thedigitalhacker.com/nyt-found-to-be-using-dark-patterns/.

[14] *See* https://www.bbb.org/us/ny/new-york/profile/publishers-periodical/the-new-york-times-company-0121-229/complaints.

[15] *See* https://www.yelp.com/biz/the-new-york-times-san-francisco-2?start=40.

[16] *See* https://www.customerservicescoreboard.com/New+York+Times.

cancels. For example, customers that sign up for a *monthly* NYT Subscription are, at the end of

the initial one-month period, automatically renewed and typically charged the full amount for the

next month, and every month thereafter if they do not cancel. Defendant's NYT Subscriptions

constitute automatic renewal and/or continuous service plans or arrangements for the purposes of

N.C.G.S. § 75-41.

20.     Consumers can sign up for one of Defendant's subscription plans through the NYT

Website, on either its mobile or desktop format, or Defendant's mobile application. Defendant

provides monthly and/or yearly subscription plans, as shown in the screen shot below:[17]



21.     After selecting a subscription option, consumers are directed to subsequent

webpages on the NYT Website and/or App where they are prompted to create a membership

account and input their billing information. After these steps, consumers are directed to another,

final webpage (the "Checkout Page"), where prospective subscribers are invited to complete their

purchase. On the Checkout Page, there are two distinct areas of the webpage that contain

---

[17] This screen shot was captured from the NYT Website on April 6, 2020. While the prices
contained therein accurately reflect the costs associated with the various NYT Subscriptions as
of that date, exact costs on other dates may vary based on the pricing structure in place on the
date of purchase and the availability of a promotional discount offer at that time, among other
factors.

potentially relevant information regarding the automatic renewal offer terms associated with the NYT Subscriptions: (1) the block of text located to the right of the screen, immediately below the bolded and capitalized text that reads "Payment Information"; and (2) the block of text located immediately above the "Purchase Subscription" button. These blocks of text contain the following language:



**$4.00**

Enjoy unlimited articles, podcasts, videos and more on NYTimes.com and the NYTimes app.

**PAYMENT INFORMATION**

Your payment method will be automatically charged $4.00 every 4 weeks for the first year ($1.00 per week).

It will then be automatically charged $17.00 every 4 weeks thereafter, starting on April 5, 2021 ($4.25 per week).

Your subscription will continue until you cancel. You can cancel anytime.

Sales tax may apply.

**TOTAL**                    ~~$17.00~~ $4.00

By subscribing, you agree to the Terms of Sale, including the Cancellation and Refund Policy. Your subscription will renew automatically, and you will be charged in advance. You may cancel at any time. The cancellation goes into effect at the start of your following billing cycle.

22. Regardless of how the consumer subscribes (via the NYT Website on its mobile or desktop format, or through the mobile application) or which NYT Subscription plan the consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either before or after checkout, and it never requires the individual to read or affirmatively agree to any terms of service, i.e., by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for NYT Subscriptions. Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

### D. Defendant Violates North Carolina's Automatic Renewal Law

23. At all relevant times, Defendant failed to comply with the ARS in four ways: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner in the contract offer in violation of N.C.G.S. § 75-41(1), failing to disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services, in direct violation of N.C.G.S. § 75-41(2), failing to provide written notice for any automatic renewal exceeding 60 days, by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date as required by N.C.G.S. § 75-41(3).; and failing to clearly and conspicuously disclose the changing terms of the contract as required by N.C.G.S. § 75-41(4).

### i. Defendant does not present automatic renewal terms in a clear and conspicuous manner.

24.     First, the relevant portion of the Checkout Page does not present the complete "automatic renewal offer terms[,]" that is described in N.C.G.S. § 75-41(1). Specifically, although the Checkout Page states that the customer's "subscription will continue until [the customer] cancel[s,]" it nevertheless fails to comply with the ARS because it is placed in the block of text positioned near the top right of the webpage, while the "Purchase Subscription" button appears towards to bottom left of the webpage. Moreover, it is presented in the same size, color, and font as that of the surrounding block of text, and it is placed alongside other, unrelated disclosures without distinction from the surrounding text of the same size in any manner that calls attention to the language. In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as required by N.C.G.S. § 75-41(1). Given such inconspicuousness, Defendant fails to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by statute.

### ii.     Defendant does not disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services.

25.     With respect to cancellation, the relevant portion of the Checkout Page states: "You may cancel at any time. The cancellation goes into effect at the start of your following billing cycle." However, the Checkout Page contains no explanation of *how* to cancel. For instance, the Checkout Page does not mention that subscribers must contact Customer Care in order to cancel their NYT Subscriptions, which they can do by calling a toll-free number during particular hours or by utilizing the chat function on the NYT Website, as is set forth in the "Help" articles accessible from the "Account Management" page of the NYT Website.[18] Yet, Defendant failed to place

---

[18] *See* https://help.nytimes.com/hc/en-us/articles/360003499613-Cancel-your-subscription ("Cancel Your Subscription * There are several ways to unsubscribe from The Times. … * Speak with a Customer Care Advocate * Call us at 866-273-3612 if you are in the U.S. Our

consumers on notice of these aspects of Defendant's cancellation policy in accordance with statute because the ARS requires Defendant "Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services." N.C.G.S. § 75-41(2). In other words, the required terms must appear on the Checkout Page, and be clear conspicuous and explain how to cancel the contract. Defendant's Checkout Page does not fulfill either of those requirements.

26.     Moreover, the disclosures hidden in links on the Account Management page also fail to place consumers on notice of the cancellation policy as required by statute because consumers may only access that portion of the NYT Website *after* completing the checkout process and fulfilling the subscription agreement, and the ARS requires disclosure of such terms "in the initial contract, contract offer, or with delivery of products or services." N.C.G.S. § 75-41(2). Additionally, Defendant does not specify anywhere on the Checkout Page that "[d]igital products sold as part of a promotion[] … may have different cancellation or refund policies that will be made clear at the time of purchase[,]" or that "[c]ertain promotions may not permit cancellation during the promotional period[,]" as do terms set forth on other pages of Defendant's website.[19] Defendant therefore fails to present pertinent information regarding cancellation as required by N.C.G.S. § 75-41(2).

> ### iii.    Defendant does not give notice the to consumer by personal deliver, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed.

---

hours are 7 a.m. to 10 p.m. E.S.T. Monday to Friday, and 7 a.m. to 3 p.m. E.S.T. Saturday and Sunday. … * Chat with a Customer Care Representative * When chat is available, click the 'Chat' button to the right or bottom of this page.").

[19] *See* https://help.nytimes.com/hc/en-us/articles/115014893968-Terms-of-sale#canceldigi.

27.     After the consumer subscribes to Defendant's autorenewal subscription, after a Plaintiff receives a confirmation email that confirms their subscription, Defendant never gives any notice a subscription is to be automatically renewed. Per N.C.G.S. § 75-41(4), for any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date.

28.     Defendant provides no notice, whether it be by personal delivery, electronic mail, or first-class mail, for any automatic renewal exceeding 60 days.

29.     The failure to give the required notice for any auto renewal exceeding 60 days is in clear violation of N.C.G.S. § 75-41(4).

<h4>iv.    <u>Defendant does not clearly and conspicuously disclose the terms of the contract that will change upon the automatic renewal of the contract.</u></h4>

30.     Furthermore, although the Checkout Page states the initial amount to be charged to the consumer's Payment Method for the first renewal period of the consumer's NYT Subscription (*e.g.*, the amount to be charged on a single occasion for the first month of a monthly subscription, or for the first year of a yearly subscription), it does not contain a clear and conspicuous statement that is required by statute, that must state "[i]f the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print." N.C.G.S. § 75-41(4).

31.     Superficially, the language that the amount for Plaintiff and Class Members will change is not in 12 point bold font that is clear and conscious to Plaintiff and consumer. One must

14

zoom in to be able to see the language that is present with the disclaimer. The disclaimer is not in the required 12 point bold font for the consumer.



32.     By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARS. As a result, Defendant must provide

a full refund or credit for all of the payments by Plaintiff and Class members. See N.C.G.S. § 75-41(C)(3) "[w]here an error has caused the failure to comply with this section, the person provides a full refund or credit for all amounts billed to or paid by the consumer from the date of the renewal until the date of the termination of the contract, or the date of the subsequent notice of renewal, whichever occurs first.".

### E. Plaintiff's Facts

33.    Plaintiff Sarah Perkins is an individual consumer who purchased a monthly digital NYT Subscription from Defendant's website while in North Carolina on or around February 28, 2020. Ms. Perkins signed up for her NYT Subscription at the promotional or discounted rate of $4.00 a month. At the time of enrollment, Ms. Perkins provided her PayPal account information directly to Defendant.

34.    Before Ms. Perkins purchased her NYT Subscription, Defendant did not disclose to Ms. Perkins all required automatic renewal offer terms associated with the subscription program. Additionally, although the Checkout Page from which Ms. Perkins made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Perkins on notice. Specifically, prior to completing her initial NYT Subscription order, the relevant screens and buttons presented to Ms. Perkins did not clearly and conspicuously state that her NYT Subscription would automatically renew every month until she cancelled, and they did not describe the full cancellation policy that applied to her purchase.

35.    After Ms. Perkins completed her initial order, Defendant sent Ms. Perkins an acknowledgment email that her NYT Subscription had been activated. However, that acknowledgement email failed to provide Ms. Perkins with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Perkins's NYT Subscription in a manner capable of being

16

retained by her. Ms. Perkins did not receive any other acknowledgements that contain the required information.

36. As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Perkins selected and paid for her discounted NYT Subscription in or around February 28, 2020, she was unaware that Defendant enrolled her in an "automatic renewal" program under which the subscription would renew each month at varying rates unless Ms. Perkins chose to cancel.

37. Further, Ms. Perkins subscription started on February 28, 2020 for $4 dollars per month. On February 24, 2021, her subscription amount doubled to $8 per month.

38. Prior to Ms. Perkins' renewal on February 24, 2021, Defendant did not give notice by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date.

39. Defendant nevertheless automatically renewed Ms. Perkins's NYT Subscription and charged Ms. Perkins's Payment Method an additional twenty three times for a total of eleven unauthorized charges amounting to $136 to Ms. Perkins's PayPal account without her knowing consent.

## CLASS ALLEGATIONS

40. Plaintiff brings this action pursuant to North Carolina Rule 23 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in North Carolina who, within the applicable statute of limitations period, up to and including the date of final judgment in

this action, incurred renewal fee(s) in connection with Defendant's *The New York Times* subscription offerings.

41.     Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

42.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

43.     **Numerosity:** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least tens of thousands of consumers throughout North Carolina. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

44.     **Commonality and Predominance:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's subscriptions constitute "automatic renewals" within the meaning of N.C.G.S. § 75-41; (b) whether Defendant failed to provide the clear and conspicuous language required by N.C.G.S. § 75-41(1) and N.C.G.S. § 75-41(2); whether Defendant provided disclosed the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print as required by N.C.G.S. § 75-41(3); (d) whether Defendant's conduct alleged herein constitutes unfair and deceptive trade practices; (e) whether Defendant's conduct alleged herein constitutes unjust enrichment; (f) whether Plaintiff and the Class are entitled to damages and/or restitution;

and (g) whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

45. **Typicality:** The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to comply with N.C.G.S. § 75-41 in connection with its offerings of subscriptions to *The New York Times*.

46. **Adequacy:** Plaintiff will fairly and adequately protect Class Members' interests. Plaintiff has no interests antagonistic to Class Members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

47. **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs,

serves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

48.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

49.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of their wrongdoing.

50.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## FIRST CAUSE OF ACTION
## VIOLATION OF N.C.G.S. § 75-41
### (On Behalf of Plaintiff and All Class Members)

51.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

52.     Pursuant to N.C.G.S. § 75-41, any person engaged in commerce that sells, leases, or offers to sell or lease, any products or services to a consumer pursuant to a contract, where the contract automatically renews unless the consumer cancels the contract, shall do all of the following: (1) Disclose the automatic renewal clause clearly and conspicuously in the contract or contract offer; (2) Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services; (3) For any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the

20

consumer prior to that date; and (4) If the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print. Here Defendant's subscriptions to *The New York Times* violates all requirements under N.C.G.S. § 75-41.

53.     As described above, Plaintiff and Class members have received subscriptions of *The New York Times* that violate all requirements under N.C.G.S. § 75-41.

54.     Defendant is not afforded any of the protections of N.C.G.S. § 75-41(c) as, upon information and belief, Defendant cannot demonstrate that it: (1) has established and implemented written procedures to comply with N.C.G.S. § 75-41 and enforces compliance with the procedures; (2) any failure to comply with N.C.G.S. § 75-41 is the result of error; and (3) where an error has caused the failure to comply with N.C.G.S. § 75-41, Defendant provides a full refund or credit for all amounts billed to or paid by Plaintiff and Class members from the date of the renewal until the date of the termination of the contract, or the date of the subsequent notice of renewal, whichever occurs first.

55.     Plaintiff and Class members have been harmed in the amounts that they otherwise would not have paid.

56.     Plaintiff and Class members would have cancelled their subscriptions had they been provided notice of their subscriptions renewing.

<u>**SECOND CAUSE OF ACTION**</u>
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**(On Behalf of Plaintiff and All Class Members)**

57.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.     Defendant's acts and omissions as set forth herein were in or affecting commerce.

21

59. As set forth herein, Defendant has violated the provisions of N.C.G.S. Chapter 75; specifically, N.C.G.S. § 75-41.

60. N.C.G.S. § 75-16 provides: "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."

61. Defendant has committed an unfair and deceptive trade practice as defined by N.C.G.S. § 75-16.

62. Plaintiff and Class members are entitled to an award of treble damages against Defendant pursuant to N.C.G.S. § 75-16.

### THIRD CAUSE OF ACTION
UNJUST ENRICHMENT
(On Behalf of Plaintiff and All Class Members in the Alternative)

63. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

65. Defendant's conduct violated, *inter alia*, state and federal law by automatically renewal subscriptions without written notice.

66. Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Subscriptions at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and

enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

67.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Subscriptions, which they did not intend to renew.

68.     Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

69.     Accordingly, Plaintiff and Class Members seek disgorgement of all profits resulting from such payments from which Plaintiff and Class Members may seek restitution.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

A.      For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order declaring that Defendant's conduct violates the statutes and common laws referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

23

D.  For actual and/or compensatory in amounts to be determined by the Court and/or jury, and that any award of damages be trebled pursuant to N.C.G.S. § 75-16;

E.  For prejudgment interest on all amounts awarded;

F.  For an order of restitution and all other forms of equitable monetary relief;

G.  For injunctive relief as pleaded or as the Court may deem proper; and

H.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

### JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted, this 23rd day of February, 2022.

Daniel K. Bryson
N.C. Bar No.: 15781
James R. DeMay
N.C. Bar No.: 36710
J. Hunter Bryson
N.C. Bar No.: 50602
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
dbryson@milberg.com
hbryson@milberg.com
jdemay@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: 313-303-3472
nsuciu@milberg.com

24

*Attorneys for Plaintiff*
*\*Pro-hac vice forthcoming*